IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE MARIE EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-01255 |
| | ) | |
| NANCY A. BERRYHILL, | ) | (MANNION, J.) |
| Acting Commissioner of | ) | (ARBUCKLE, M.J.) |
| Social Security, | ) | |
| | ) | **[FILED VIA ECF]** |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF ON THE MERITS

## I.    STATEMENT OF THE CASE

This case is an appeal under 42 U.S.C. § 405(g) of a final administrative decision of Defendant, the Commissioner of Social Security ("Commissioner"), which denied Plaintiff, Christine Marie Evans, Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On March 24, 2015, she was initially denied by the State Agency. (Tr. 111-115).[1] Plaintiff requested an administrative hearing on April 15, 2015. (Tr. 129-130). Following, an administrative hearing was held before an Administrative Law Judge ("ALJ") on January 31, 2017 (Tr. 82-98). On April 5, 2017, the ALJ used the well-known five-step sequential evaluation to decide that the

---

[1] References to (Tr.___) refer to the Administrative Record filed as Docket Entry # 8.

Plaintiff was not disabled. (Tr. 34-52). 20 C.F.R. § 404.1520 (sequential evaluation).[2]

At step one, the ALJ found that Ms. Evans had not engaged in substantial gainful activity since March 27, 2013, her alleged onset date. (Tr. 39). 20 C.F.R. § 404.1520(b) (step one).

At step two, the ALJ determined that Ms. Evans had, as "severe" impairments, non-dominant right shoulder osteoarthritis, status-post arthroscopy of right shoulder, degenerative disc disease of the cervical spine and lumbar spine, and a vision impairment. (Tr. 39). The ALJ concluded that Ms. Evans had as "no severe mental impairments." (Tr. 39). 20 C.F.R. § 404.1520(c) (step two).

At step three, the ALJ concluded that Ms. Evans did not have an impairment(s) or combination of impairment(s) that met or equaled a Listed impairment. (Tr. 40). 20 C.F.R. § 404.1520(d) (step three).

After step three but before step four, the ALJ made a residual functional capacity assessment, i.e., a determination of the most that Ms. Evans could do despite the total limiting effects of all her impairments. (Tr. 40). 20 C.F.R. § 404.1545 (defining "residual functional capacity"). From these impairments, the ALJ assessed that the Plaintiff could a range of sedentary

---

[2] Before undertaking the sequential evaluation in this case, the ALJ noted that Ms. Evans's insured status had not expired. (Tr. 39.)  (Therefore, her insured status was not at issue.)

and light work except she is limited to working in a clean and temperate environment, cannot climb or crawl, and cannot do any night driving. (Tr. 40). <u>See</u> 20 C.F.R. § 404.1567(a) (defining "sedentary" work); 20 C.F.R. § 404.1567(b) (defining "light" work).

At step four, the ALJ determined that Ms. Evans can perform her past relevant work as a an administrative assistant which the ALJ found to be sedentary, skilled work. (Tr. 45). 20 C.F.R. §404.1520(f) (step four).

As an alternative finding, the ALJ proceeded to step five. (Tr. 46). 20 C.F.R. § 404.1520(g) (step five). At that, the last step, the ALJ relied on Medical-Vocational Guidelines (Grid) Rules as a "framework" and the Vocational Expert's testimony to decide that Ms. Evans was not disabled. (Tr. 46-47). 20 C.F.R. pt. 404, subpt. P, app. 2.

On February 17, 2017, the ALJ's decision became the Commissioner's final decision subject to judicial review when the Appeals Council denied Ms. Evans's request for review. (Tr. 1-6). 20 C.F.R. § 422.210(a). Ms. Evans then initiated this civil action. 42 U.S.C. § 405(g).

Substantial evidence is the standard of review. 42 U.S.C. § 405(g); <u>See also</u> <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is more than a mere scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>

v. Underwood, 487 U.S. 522, 564-65 (1988).

## II.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

Ms. Evans was injured at work when she was lifting boxes on September 12, 2012. (Tr. 258). On November 2, 2012, MRI revealed cervical spine disc degeneration and disc herniation with right foraminal impingement at C5-C6. (Tr. 661).

In the course of her workers' compensation litigation, she received an independent medical examination ("IME") from Dr. Cooper on January 23, 2013. (Tr. 667). The IME physician opined that Ms. Evans would be capable of working with a 5 pound lifting restriction. (Tr. 667, 704, 707).[3]

She had shoulder surgery in March 2013 with little relief from pain. (Tr. 258). She had cubital tunnel surgery on June 25, 2013. (Tr. 435). She then had another surgery on February 11, 2014 which included debridement of labrum, acrominoplasty and biceps tenolysis. (Tr. 258). Thereafter, Ms. Evans was to undergo physical therapy. (Tr. 259).

On September 19, 2013, Ms. Evans received an injection which caused more pain and a burning sensation. (Tr. 433).

---

[3] Throughout the record, these work restrictions were referred to as "light work" or "light duty"; however, pursuant to 20 C.F.R. § 404.1567 and SSR 83-10, a 5 pounds lifting restriction is a limitation to sedentary work or less – not "light work" as stated by the records.

On March 20, 2014, Ms. Evans was examined by Dr. Hawk. (Tr. 367). Dr. Hawk limited her to a 5 pound lifting restriction and no repetitive use of her right upper extremity. (Tr. 367). This restriction continued through her subsequent visits. (Tr. 339, 349, 357, 852).

Ms. Evans had an EMG nerve conduction study performed in May 2014 as the result of ongoing leg and foot pain. (Tr. 1278). This EMG revealed left L4 radiculopathy, L5 radiculopathy, and S1 radiculopathy. (Tr. 1278). Follow up MRI revealed a significant disk herniation with significant spinal stenosis at L3-4. (Tr. 1313).

On June 30, 2014 Ms. Evans was examined by Dr. Hawk. (Tr. 339). She was tender directly over the a.c. joint. (Tr. 339). Cross arm maneuvers caused pain. (Tr. 339). She had pain over the biceps/bicipital groove. (Tr. 339). The June 2014 MRI was reviewed and revealed fluid in the subacromial space and degenerative changes in the a.c. joint. (Tr. 339). Dr. Hawk proceeded with corticosteroid injection into the a.c. joint and recommended she resume physical therapy. (Tr. 339). Dr. Hawk indicated that Ms. Evans would have a 5 pound weight limit and no repetitive use of her right upper extremity. (Tr. 339).

Ms. Evans received a second IME related to her workers' compensation matter on August 25, 2014. (Tr. 844). This IME was performed by Dr. Scott Sexton – a different physician than the one who performed the prior IME. (Tr. 850). On examination there were positive impingement signs including Neer and Hawkins sign. (Tr. 846). She had a positive cross arm abduction maneuver for reproduction of acromioclavicular joint pain. (Tr. 846). Objective testing and grip strength noted reduced strength in her right hand. (Tr. 846). Dr. Sexton believed Ms. Evans has reached maximum medical improvement. (Tr. 850). He recommended restrictions as it pertains to overhead use of the right arm. (Tr. 850). More specifically, he recommended no lifting greater than 5 pounds above her shoulder on the right. (Tr. 852).

Ms. Evans underwent a functional capacity evaluation ("FCE") on August 27, 2014. (Tr. 602). This FCE evidenced a limitation to sedentary work except right upper extremity repetitive motion is contraindicated. (Tr. 602). More specifically, the FCE evidenced that Ms. Evans could only carry 7 pounds in her right upper extremity. (Tr. 603).

On August 29, 2014, Ms. Evans was again examined by Dr. Hawk. (Tr. 331). Findings on examination were similar to the prior exam. (Tr. 331). Dr. Hawk believed that Ms. Evans may be reaching maximum medical

improvement. (Tr. 331). Dr. Hawk also reviewed the FCE. (Tr. 331). Dr. Hawk noted that the FCE considered injuries to her knee and back which were not work-related. (Tr. 331). While Dr. Hawk agreed with the limitation in repetitive use of her right upper extremity, Dr. Hawk was not able to consider her mobility limitations in his opinion because he was only to consider work-related injuries for workers' compensation purposes. (Tr. 331).

In September of 2014, Ms. Evans suffered a left L4-5 disc rupture as evidenced by MRI. (Tr. 1055). On examination, motor testing showed a left foot drop (4/5), sensation was decreased in the left L5 root distribution, and straight leg raise test was positive on the left. (Tr. 1055). She was diagnosed with left L5 radiculopathy due to disc rupture and a L4-5 discectomy was recommended. (Tr. 1056). This discectomy was then performed on October 31, 2014. (Tr. 1407). After the discectomy, Ms. Evans continued to experience radicular symptoms. (Tr. 1386).

Ms. Evans underwent another right shoulder arthroscopy on October 18, 2016 related to an impingement and rotator cuff tear. (Tr. 2238).

In addition to Ms. Evans's physical impairments, Ms. Evans suffers from psychological impairments which include anxiety and depression. (Tr. 104-105). The state agency consulting psychologist identified these impairments as medically determinable and opined that these impairments

would result in a mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 104). These psychological impairments are buttressed by the January 24, 2017 letter of her treating physicians Dr. Prater in which he stated Ms. Evans has both physical and psychological impairments which prevent her from working. (Tr. 2346).

## III.   ARGUMENTS

**1. The ALJ committed reversible error in failing to analyze Plaintiff's mental impairment using the special technique required by 20 C.F.R. § 1520a despite implicitly finding Plaintiff's mental impairment to be medically determinable.**

The Commissioner has supplemented the sequential process for evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. <u>Plummer v. Apfel</u>, 186 F. 3d 422, 428-429 (3d Cir. 1999)(<u>citing</u> 20 C.F.R. § 404.1520a)[4].

These procedures require the ALJ to first evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment(s). 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment is present,

---

[4] 20 C.F.R. § 1520a was amended in 2000, 2006, and 2011. 65 FR 50774, Aug. 21, 2000; 65 FR 60584, Oct. 12, 2000, as amended at 71 FR 16444, Mar. 31, 2006; 75 FR 62680, Oct. 13, 2010; 76 FR 24806, May 3, 2011. However, the regulation as discussed in <u>Plummer</u> is not materially different from the current regulation.

the adjudicator **must** rate the degree of the claimant's functional limitation based on the extent to which the impairment(s) interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c)(2) (emphasis added). At all adjudicative levels, a Psychiatric Review Treatment Form ("PRT form" or "PRTF") must be completed. 20 C.F.R. § 404.1520a(d-e). This form outlines the steps of the mental health evaluation in determining the degree of functional loss suffered by the claimant. Plummer, 186 F. 3d at 428-429. At the administrative law judge hearing level, the written decision *must* incorporate the pertinent findings and conclusions based on the technique. 20 C.F.R. § 404.1520a(e)(4)(emphasis added). See also Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000).

The regulations provide the first three factors (activities of daily living; social functioning; and concentration, persistence, or pace) are rated on a five-point scale of "[n]one, mild, moderate, marked, and extreme" while the "fourth functional area (episodes of decompensation)" is rated using "the following four-point scale: [n]one, one or two, three, four or more." 20 C.F.R. 404.1520a(c)(4).  Moreover, *the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.* 20 C.F.R. § 404.1520a(e)(4) (emphasis added).

Here, the ALJ's decision cannot be supported by substantial evidence as the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520a by failing to analyze or incorporate pertinent findings of the PRTF. The ALJ did not analyze the functional areas and did not rate the areas on the five-point scale as required. Failure to do so is reversible error.

When there is evidence of a mental impairment, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a. Plummer, 186 F. 3d at 428-429 (citing Andrade v. Secretary of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir.1993)). These procedures are intended to ensure a claimant's mental health impairments are given serious consideration by the Commissioner in determining whether a claimant is disabled. Id. Failure to do so is reversible error. See Hayes v. Berryhill, Civ. A. No. 3:17-cv-00648-CCC (M.D. Pa. June 20, 2018) (Report and Recommendation adopted July 26, 2018); Bunch v. Astrue, 2011 U.S. Dist. LEXIS 139764, at *23-26 (M.D. Pa. 2011); Keyser v. Astrue, 648 F.3d 721, 725-27 (9th Cir. 2011); Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005)).

Moreover, SSR 96-8p states that the psychiatric review technique described in 20 CFR 404.1520a and summarized on the Psychiatric Review Technique Form (PRTF) *requires* adjudicators to assess an individual's

limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p (emphasis added).

The ALJ implicitly found Ms. Evans to have a medically determinable mental impairment. (Tr. 40). The ALJ found "no severe mental impairments." (Tr. 40). Of note, the ALJ did not find there were no "medically determinable mental impairments." If the ALJ had intended to find the impairment to be "not medically determinable", the ALJ could have done so. By either explicitly or implicitly finding the impairments to be non-severe, the ALJ found them to be medically determinable. Furthermore, this finding would be consistent with the state agency consulting psychologist's opinion that Ms. Evans has a medically determinable mental impairment. (Tr. 104).[5]

Despite implicitly finding these impairments to be medically determinable, the ALJ did not complete the PRTF as required by 20 C.F.R. § 404.1520a. (Tr. 39-40). Because the ALJ implicitly found Ms. Evans to have medically determinable mental impairments, the Social Security regulations require the ALJ to complete a PRTF or incorporate the analysis of a PRTF into the decision and failure to do so warrants remand. See, e.g., Moore, 405 F.3d at 1214 (construing 20 C.F.R. § 404.1520a and stating "the

---

[5] Plaintiff notes that the ALJ neither discussed nor considered the state agency consulting psychologist's opinion. That is a separate basis for error that Plaintiff addresses below.

social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into [the ALJ's] findings and conclusions" if a claimant has presented a colorable claim of mental impairment); Kohler v. Astrue, 546 F.3d 260 (2d Cir. 2008); Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir.2000)(failure to follow § 404.1520a requires remand "where there is a colorable claim of mental impairment."); Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir.1994); Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir.1991) (per curiam) ("Since the record contained evidence of a mental impairment that allegedly prevented claimant from working, the Secretary was required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and document the procedure accordingly."); Stambaugh v. Sullivan, 929 F.2d 292, 296 (7th Cir.1991) (remanding because ALJ failed to document application of special technique, despite evidence suggesting significant mental impairment).

This error is not harmless. Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to the Plaintiff's residual functional capacity, it cannot be said that the error is harmless. See Moore, 405 F.3d at 1214; Kohler v. Astrue, 546 F.3d at 269 ("We can neither identify findings regarding the degree of Kohler's limitations in each of the four functional areas nor discern whether the ALJ properly

considered all evidence relevant to those areas. We therefore cannot determine whether the ALJ's decision regarding Kohler's claim is supported by substantial evidence and reflects application of the correct legal standards.").

Plaintiff is aware that the Commissioner typically responds to arguments based upon 404.1520a by arguing that because the mental impairments are non-severe, there is no harm and thus, the case should not be remanded. See, e.g., Hayes v. Berryhill, Civ. A. No. 3:17-cv-00648-CCC (M.D. Pa. June 20, 2018) (Report and Recommendation adopted July 26, 2018). However, as in Hayes, the Court should not be persuaded by this argument:

> While the Commissioner contends that "no reasonable interpretation" of the record would lead to the finding of a severe mental impairment, she does not appear to dispute that Ms. Hayes's mental impairments were medically determinable or even colorable. When a "colorable claim" of a mental impairment exists, remand is warranted when the ALJ fails "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." Moore, 405 F.3d at 1214; see also Keyser, 648 F.3d at 726 (citing Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000)) (Holding that an ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a "colorable claim of mental impairment.")

Hayes, Civ. A. No. 3:17-cv-00648 at * 17.

Here, no reasonable argument can be made that Ms. Evans does not have a medically determinable mental impairment or that she does not have a colorable claim of a mental impairment. In addition to the fact that the ALJ implicitly found the impairment to be medically determinable, the only medical opinion of record relating to Ms. Evans's mental impairments is that of the state agency consulting psychologist who found those impairments to be medically determinable. (Tr. 104).

As a result, no reasonable argument could be made that this error is harmless. Because Ms. Evans had a colorable claim of a mental impairment, this error is not harmless. Hayes, Civ. A. No. 3:17-cv-00648 at * 17 (citing Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000)) (Holding that an ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a "colorable claim of mental impairment.").

Moreover, the cases ordinarily cited by the Commissioner which find such an error to be harmless all require analysis comparable to the PRTF to be found within the decision. See Hayes, Civ. A. No. 3:17-cv-00648 at * 15-16 (discussing harmless error in the context of 404.1520a). Here, the ALJ made no such analysis. The ALJ mentions the mental impairments only briefly to find them non-severe. He does not include any analysis comparable to the PRTF further lending support to Plaintiff's argument that

this error is not harmless.

This error is further compounded by the fact that even non-severe mental impairment can preclude the performance of skilled work such as the Plaintiff's. See, e.g., Ayala v. Colvin, Civ. A. No. 13-cv-5008 (E.D. Pa. 2015), Mattero v. Colvin, Civ. A. No. 14-cv-598 (E.D. Pa. 2015), Laws v. Colvin, Civ. A. No. 13-cv-6609 (E.D. Pa. 2014), Lindsay v. Colvin, 2014 WL 2808184 (E.D.Pa. 2014), Schearer v. Colvin, Civ. A. No. 12-4774, at 8 (E.D. Pa. Dec. 13, 2013) (ALJ's failure to pose hypothetical question to the VE concerning a mild limitation in concentration persistence or pace constituted legal error and required remand).

Indeed, it is well established that in assessing a claimant's residual functional capacity, an ALJ is required to consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not considered severe. 20 C.F.R. § 416.945 (a)(2); Bauer-Cromartie v. Astrue, 2008 WL 2152057*2 (E.D. Pa. 2008). There is no indication that the ALJ did so here.

Thus, at a minimum, remand is required for the ALJ to properly analyze Plaintiff's mental impairment and properly use the PRTF as required by 20 C.F.R. § 404.1520a.

## 2. The ALJ's residual functional capacity assessment cannot be supported by substantial evidence as the ALJ failed to weigh several medical opinions of record.

Despite a clear regulatory requirement to weigh each and every medical opinion of record, the ALJ failed to discuss or consider several opinions of record. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). More specifically, the ALJ failed to discuss, consider, or weigh three separate opinions: (1) that of Dr. Cooper, the first IME physician (Tr. 667); (2) that of Dr. Sexton, the second IME physician (Tr. 844); and, (3) that of Dr. Perch, the state agency consulting psychologist. (Tr. 104-105).

The only medical opinions discussed and weighed by the ALJ were (1) that of Dr. Gryczko, the state agency physician; (2) that contained within the FCE; (3) that of Dr. Hawk; and (4) that Dr. Prater. (Tr. 45). There is simply no mention of, discussion of, or weighing of the opinions of Dr. Cooper, Dr. Sexton, or Dr. Perch. (Tr. 45). As a result, the residual functional capacity assessment, hypothetical question(s) to the vocational expert, and step five findings cannot be supported by substantial evidence 20 C.F.R. § 404.1527(c); see also Burnett v. Comm 'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)("In

the absence of such an [explanation], the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." ).

At a minimum, remand is required for the ALJ to consider these three opinions in the first instance. Moreover, because the Commissioner's decision can only be deemed to be based on substantial evidence where the ALJ's analysis is sufficiently thorough, see, e.g., Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979), an ALJ's failure to discuss three separate, relevant medical opinions of record falls short of the evidentiary standard.

This error is not harmless. Both IME physicians opine that Ms. Evans would have a five pound lifting restriction. Dr. Perch opined that Ms. Evans would have mild limitations in the area of concentration, persistence, or pace as well as social functioning. These limitations were not contained within the residual functional capacity assessment or within the hypothetical question(s) to the vocational expert.  When the ALJ's denial of benefits is not based upon an accurate hypothetical, reversal is the most appropriate disposition of the case. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

**3. The ALJ's residual functional capacity assessment cannot be supported by substantial evidence as the ALJ's purported basis for rejecting Ms. Evans's five pound lifting restriction relies upon extra-record evidence not adduced at hearing.**

Several medical opinions of record provide that Ms. Evans would have a five pound lifting restriction in her right upper extremity: (1) that of Dr. Hawk; (2) that contained within the FCE; (3) that of Dr. Cooper; and (4) that of Dr. Sexton. As set forth above, the ALJ did not weigh the opinions of Dr. Cooper or Dr. Sexton in the first instance and therefore, did not consider these opinions when considering the five pound lifting restriction. This argument was addressed above; however, failure to consider the opinions of Dr. Cooper and Dr. Sexton also contributed to the defective analysis of the FCE and of Dr. Hawk's opinion.

The ALJ gave "some weight" to Dr. Hawk's opinion. (Tr. 45). The ALJ gave "great weight" to the opinion for light exertional work, but "little weight" for the opinion limiting Ms. Evans to a five pound weight lifting limit. (Tr. 45). The ALJ's analysis of Dr. Hawk's opinion is not supported by substantial evidence for two main reasons.

First, while Dr. Hawk stated "light work only" in his opinion, he immediately followed that with "5 pound weight limit". (Tr. 1304). Thus, Dr. Hawk did not actually limit Ms. Evans to "light work" as defined by the regulations – he limited her to less than sedentary work. 20 C.F.R. §

404.1567(a) clearly states that sedentary work requires lifting 10 pounds occasionally. If Dr. Hawk limited Ms. Evans to a 5 pound weight limit, he did not limit her to "light work" even if he used the term "light work".

The ALJ's residual functional capacity assessment cannot be supported by substantial evidence as the ALJ failed to appreciate that Dr. Hawk did not intend to limit Plaintiff to "light work" as defined in the regulations, but merely used the term "light work".

Second, the ALJ's rejection of the 5 pound weight limit is based upon extra record evidence. Namely, the ALJ rejected this opinion because Ms. Evans "has clearly demonstrated the ability, by her activities (e.g., hunting, throwing rocks) that she is capable of lifting more than this weight." (Tr. 45). However, nowhere in the record is there evidence as to how much weight Ms. Evans lifted during these activities. In order for the ALJ to conclude that "throwing rocks" conflicts with a 5 pound weight restriction, the ALJ must necessarily conclude that Ms. Evans threw rocks weighing more than 5 pounds. There is no evidence of record to this effect. As a result, the ALJ necessarily relied on extra-record evidence - evidence not adduced at hearing - to decide that Ms. Evans was not disabled. 42 U.S.C. § 405(b)(1) (referring to evidence "adduced at hearing"); 42 U.S.C. § 405(g) (restricting judicial review under sentence four to the closed administrative record).

Moreover, this conclusion defies common sense. When someone says he or she "throws rocks", it is not reasonable to conclude that the rocks were more than five pounds. A five pound rock is a very large rock. The ALJ could have asked Ms. Evans how large the rocks she threw were, but he chose not to. The ALJ cannot fail to ask a question of a claimant only to rely on speculation and extra-record evidence.

There is another way to understand this error. The ability to hunt or throw rocks does not mean that Plaintiff can lift more than five pounds on a regular and continuing basis as opined by Dr. Hawk. Compare Hawk v. Colvin, Civ. A. No. Case 1:14-cv-00337-CCC at * 33 (M.D. Pa. Feb. 13, 2015). The ability perform sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity. Id. at 31 (quoting Fargnoli v. Massanari, 247 F.3d 34, 40 (3rd Cir. 2001). Further the agency "[does] not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572. Thus, an ALJ may not use such activities to reject a treating source opinion when such activities do not actually conflict with the opinion. See Hawk, Civ. A. No. 1:14-cv-00337-CCC at * 33.

Finally, as set forth above, both IME physicians opine that Ms. Evans would have a five pound lifting restriction. Thus, Dr. Hawk's five pound lifting restriction is consistent with two separate IME physicians who were hired by the workers' compensation insurance carrier who was paying Ms. Evans workers' compensation benefits. As the ALJ did not consider these opinions, the ALJ failed to properly consider that Dr. Hawk's opinion was consistent with these two separate opinions.

For these reasons, it cannot be said that the ALJ properly analyzed the opinion of Dr. Hawk. The ALJ's medical opinion analysis, residual functional capacity assessment, hypothetical question(s) to the vocational expert, and step five findings cannot be supported by substantial evidence. Remand is required.

## IV.   CONCLUSION

It is therefore respectfully requested that this Honorable Court remand with instructions to: (1) evaluate Plaintiff's mental impairments as required by 20 C.F.R. § 404.1520a; (2) properly consider all medical opinions of record; (3) reassess Plaintiff's residual functional capacity; and, (4) issue a new decision based on substantial evidence and proper legal standards.

Dated:  November 3, 2018                    Respectfully submitted,
                                            s/ Patrick J. Best, Esq.
                                            Patrick J. Best